Thank you, Judge McKee, and may it please the Court, my name is David Frederick for Shell. On behalf of all of the appellants, I'd like to reserve four minutes of time for rebuttal. You are or are not arguing complete preemption? We are not.  Yes. What we're arguing, though, is that these cases deserve to be in federal court because they arise under federal common law. Federal common law is the law that governs interstate pollution for ambient air and water. And under federal common law, the federal common law is what determines whether or not a claim such as that brought by Delaware in the City of Hoboken can exist. Where the courts of appeals have gotten this wrong, other than the Second Circuit... They've all gotten it wrong. Well, I think it's a confusing area of law, and I want to start with the Second Circuit decision. Isn't the Second Circuit in a different posture than we are? But not relevant posture. What the Second Circuit decided was that because these are claims fundamentally about emissions, the causation element of the claim rests on worldwide emissions. The case had to arise under federal common law, and it decided that... It was a diversity case, right? I don't... It was filed in federal court. It was filed in federal court. I don't recall whether it was a complete diversity case or not, but the point was that for federal... Sorry for interrupting you. But the court there never addressed the issue before us, and that was removability. Because it was already filed in federal court. Yes, but it had to determine its own jurisdiction, and it had to determine what... But the diversity, if I'm right, it had jurisdiction. There wasn't really an issue about jurisdiction. But it had to determine what source of law governed the claims. Right. And when it determined that the source of law was federal common law, it then addressed the second point in the analysis, and that was whether or not the federal common law displaced the alleged state nuisance cause of action that had been brought by the city of New York. We submit that's the correct way to view the case, because a string of Supreme Court decisions from AEP, the Milwaukee cases, et cetera, say that if the case is about interstate pollution, interstate emissions, it has to arise under federal common law. And then you proceed to the next question, which is not before the court. And that is, has that cause of action, has that claim been displaced by the way federal common law operates? And where these courts of appeals have gotten this wrong, respectfully, is they've jumped to the merits question and blown past the source of law question. Right. But, you know, drive-by jurisdictional rulings don't have precedential value. The Second Circuit is not addressing it as a matter of that. You basically have to be arguing that all these state nuisance laws and trespass laws, et cetera, are preempted. That would be a massive expansion of federal common law preemption doctrine. No, it wouldn't actually, Your Honor, because the Supreme Court has held for over 100 years, as the City of New York case said, that when the case involves interstate pollution, there is no room for a state to impose its regulatory effects and regulatory rules on out-of-state conduct. And that's function. But we still have to look to the well-pleaded complaint, though. We still have to look to the face of the complaint and look at the nature of what is being alleged to and where the liability they're charging would arise from. Right. And normally, the plaintiff has mastered the complaint that, you know, rivet, underscores, there's not much left of the moiety footnote, if anything. So unless there's complete preemption, why can't they just cast this as a state law tort? Because the causation element is fundamentally federal. And let me give you a simple illustration why. You'll hear a lot about the breach of duty, the alleged misrepresentations, as in a classic state law misrepresentations case arises under state law. I accept that. But that's not the gist of the complaint. The gist of the complaint is that those misrepresentations have worldwide effects. Causation and harm have to be federal because they are decided at an international level. The mechanism of causation, can we agree upon this? The mechanism is people bought your fuel. They burned it. The burning by the consumers led to the emissions that therefore had the global effects. Right. We're not talking about the process of producing it. We're not talking about the process of piping it. This is about what consumers did on a worldwide scale producing greenhouse gases. Federal causation element, that is true, although the Hoboken claim for trespass alleges an ability to have the state court enjoin worldwide production and marketing and refining activities of these defendants. That is paragraphs 326 and 338 of the Hoboken complaint. The Delaware complaint for nuisance goes, I think, exactly along your train of causation. But let me hypothesize that if in seeking to mitigate the claims that had been brought here, the defendants cut off all communications in the state of Delaware or Hoboken or the state of New Jersey for that matter. Under their theory of the case, they still get to bring their claim under state law because they assert that the activities that were wrongful occurred in the past. The buildup of greenhouse gases will have continuing effects. And I would submit that the 17 states that have filed an amicus brief in this court are right in that it's not for Delaware or New Jersey law to tell the rest of the world what are going to be the effects of conduct that may or may not even occur within the forum state. And that is why the causation element here is so critical. And Judge Bevis, whether you view it as looking at the crux of the case as being about international emissions or you say that the element arises, has to arise under federal common law, you get to the same place jurisdictionally, which is that federal subject matter jurisdiction is appropriate. And as your decision in the EOHC case posited, where there is federal common law, there is federal subject matter jurisdiction. And that is why we have a basics for removal. Why is the remedy here a remedy of federal jurisdiction and preemption as opposed to a limit on extraterritoriality, a limit on the ability, you know, to impose these sanctions, to enjoin, et cetera, that they'll just be limited to recovering whatever damages are actually in their territory? Because they can't prove any remedy that doesn't stem from a worldwide effect of all those consumers burning the fossil fuels. And that has to be an international and interstate remedy. Even if there was a complete stoppage now, under their theory, there will be continuing effects of the buildup of the greenhouse gases. And therefore, this in-state conduct, the in-form conduct, even for the breach of duty, I submit, has to be one that is viewed from a federal perspective. That's authority for this radical expansion of federal common law. It's not a radical expansion. And our authority is AEP, which is the Supreme Court. It is a decision by Justice Ginsburg who said that interstate emissions arises under the federal common law. The Milwaukee cases, which involved interstate water pollution, also from the Supreme Court, and in the Seventh Circuit, the Milwaukee III decision, say that because these cases about interstate water pollution arise under federal common law, there is a basis for being in federal court, and there is no remedy that can be achieved under state law. This is not radical expansion, Judge Bibas. Any more than these cases are a rather ambitious and radical expansion of state tort doctrine, because they are seeking to impose under state law liability for billions of dollars for activities that occurred way far away from the forums themselves. And to regulate that kind of conduct, the other states, as amicus in this case have said, would impose an encroachment on what should be a nationally uniform approach to the problem of global climate. And that is why it is not proper for this case to be viewed through a state law nuisance lens. I think AEP got this exactly right. And the question really is what source of law starts the inquiry, and then we can have a discussion about whether these particular claims are displaced under federal common law. But, Judge Bibas, even under your own notion that these cases would go back to state court, the very first question the state court would have to decide is what law applies. Well, federal claims get heard in state court. They can be. Federal claims can be heard in state court unless there is displacement by operation of the Constitution. And the constitutional structure here is that certain of these interstate matters that are so inextricably intertwined with national and international policy, security, economy, are by their core federal claims. What is your best authority that says not just that it's a federal claim, but the federal claim can't be heard by a state court? It's not that the case can't be heard by a state court, but the case is that I think the AEP line of cases and the city of Milwaukee cases make very clear that this is federal law. And if it is federal law, we have a right to remove. It sure sounds like you have a complete preemption to me. Well, Your Honor, I think that the argument is complete preemption is a very narrow doctrine that arises by operation of how a federal statute typically operates. And there aren't that many cases on that concept, but the basic point of it is to look at whether Congress intended to occupy a field. Here we are saying that by operation of the structure of the Constitution, certain matters are committed to the federal law, the federal common law. Why wouldn't the Clean Air Act basically say that that's not the case, to the extent that the nature of this alleged harm transcends the boundaries of any one state, even any one nation, that the Clean Air Act deals with that, and that that wasn't intended to displace the kind of state actions that we have here. That gets to the problem with the complete preemption analysis, which is that under settled doctrine, a complete preemption has to give rise to a federal claim. And if there's no federal cause of action, the complete preemption doctrine doesn't apply. It's a narrow doctrine. But that's why you're arguing complete preemption. Right. But in AEP itself, the Supreme Court reserves certain questions as arising under federal common law. And the City of New York case reserved in footnote 7 the question of what you do with foreign emissions. It would be odd to suppose, for instance, that if a Canadian smelter was emitting air pollution and it fell on Michigan, and that the court there would apply Michigan state law to decide that, where the point of source was in a foreign country. And that is essentially what the City of New York held, whether or not that kind of claim could be cognizable under the Clean Air Act. Here we have a much more fundamental problem, which is that everywhere in the world is causing these emissions. And the issue is whether or not Delaware State Court or Hoboken State or New Jersey State Court has the authority under the Constitution of the United States to declare what federal policy is going to govern the conduct of these defendants who operate all around the world. Can I ask you about the Outer Continental Shelf Lands Act? Sure. When I look at that, you know, it's hard to discern what the limits are in that jurisdiction, but the wording of it looks to me like it's some kind of geographic peg. 1349b1 talks arising out of reconnection with. I think you've got a good claim that maybe that's broader than just ordinary but-for causation. But we have this any operation conducted on the Outer Continental Shelf, which involves exploration, development, or production, or involves rights or cancellation, suspension, or termination of a lease. So something that happens on a rig or to the rig or from the rig or contract rights involving the rig, property rights, someone gets hurt on the rig. But the claims here are not about the operation on the rig leading to exploration, development, or production. This is about consumption. Combustion goes well beyond those things. So why do you think that that applies? Because the product that is being drawn out of the Outer Continental Shelf, these are clearly claims that arise out of that product. Roughly 30% of- They arise out of the product. They don't arise out of the production. It arises out of the operation that was conducted on the OCS. Why is it the way the complaint is played here, you're not alleging that they intentionally omitted federal kinds of claims to get the complaint into state court, but they're alleging the kinds of misconduct and misrepresentation, it seems to me, that would not go to the kind of production-related or concerns that you're relying upon under the Act? Well, what we're saying under the Act is that, you know, roughly a third of the oil in the United States is generated on the Outer Continental Shelf. The claims, as Judge Bevis pointed out, are based on the burning and combustion of that fuel. They're based upon misrepresentations, which go to how much of the- unless I misread it- And under their- Which goes to your conduct. Sorry. And under your theory of- Under their theory of causation, they- And therefore, they arise out of or in connection with those operations. I don't get a limiting principle. Then everybody who goes to the gas station to fill up and slips on an oil slick while pumping gas would have jurisdiction under the Outer Continental Shelf Lands Act for federal torts. No, because- Even if he has the fumes that come out of the gas station. Well, no, because the situs of the injury there is the place where the slippage occurred. The situs of the injury here is planet Earth, Judge Bevis, and that is clearly within federal law as our Constitution recognizes it. And the Constitution, by allowing these kinds of claims under OXLA, is further saying that where there is a claim that is arising out of United States-controlled Outer Continental Shelf Lands, where the gist of their claim is not any particular gallon of gas, it's the billions of dollars or billions of gallons of gas that have been combusted in various engines that have created the problem that they say entitles them to the relief that they're seeking. I don't see how we limit that. It just seems so incredibly broad and expansive. I don't know how we would limit it. That's the jurisdictional hook here. Well, the limit that you would say is that because of the expansiveness of these particular claims, that the nature of the harm that they are alleging all around the world and the causation of their consequences is naturally arising out of or in connection with, and they clearly are connected here to that jurisdiction because you can't, by their own pleading, disaggregate the individual molecules of these greenhouse gases. So some of them had to have been produced on the Outer Continental Shelf by matter of logic. Think about thermodynamics also. You can't contain where it's going to go. And that's why even if you were to take a but-for causation approach, our submission is that the volume of the gas supplied from the Outer Continental Shelf has to be a but-for cause of the nature of these claims just because the volume of it is so large. And all we need is that in order to be in federal court where we can vindicate the series of arguments under a federal judge about federal common law in a forum that is most suited to deciding very complicated questions of federal law rather than a Delaware or New Jersey state court, that Judge Bevis, yes, they might handle some federal cases from time to time, but I hope you would agree with me that the complexity of this matter under federal law is sufficiently complicated that that's why we have a right to be in federal court, because the federal jurisdiction is established by the federal common law. I don't understand the complexity. I think state court judges rarely can handle complex matters. It seems to me that you're arguing that the nature of the harm and the nature of the remedy suggests or cries out for federal jurisdiction. I wouldn't peg it on the complexity of the issue. Well, I'm just saying that because of the nature of these claims, they deserve to be in federal court. And you're right that our argument is based on the nature of the causation and nature of the harm. And whether you get there through Grable or you get there through the federal common law principle, the Fifth Circuit and the Eighth Circuit have already held that cases arising under federal common law that nonetheless are pleaded as state law claims are subject to removal. There are circuit conflicts on both questions, Your Honors. One is on whether or not these cases should be decided under federal common law. And the second question is whether a federal common law creates a basis for removal. So you're not operating on an entirely clean slate. And we would submit that it is not appropriate simply to follow the Ninth and the Fourth and the First Circuits. You have to take an independent look at this. We have submitted a ream of new evidence and information going to the federal officer issues and the OXLA issues. And we would urge you to take a fresh look at that because of the way this case could be developed. Let me ask you about the one really new claim here is about these specialty fuels. I want to set aside World War II, Korean War. They're too early. But the specialty fuels, maybe they're under direction. But how do we get around the fact that the plaintiffs are the master of the complaint and have made clear they're not pleading an injury based on this? Oh, and by the way, it's just half a percent or something. Well, Your Honor, for one thing, the gas has built up. Greenhouse gas has built up over the centuries. So they can't disclaim the entire basis of the atmosphere. But they can't disclaim something where there is clear action under a federal officer. And the entire oil industry developed because the United States made a policy decision back in the day not to have its own national oil company as many countries around the world have chosen to do. And by imposing very strict regulations and requirements on the development of what is a federal resource, both through federal officer and through OXLA, they have basically made the oil industry, I think, different than almost any other kind of contracting party with the federal government. These are actions where the federal government defines the exact specifications. And they can't just say that we're going to disclaim any of that for purposes of their claim but have that be a disclaimer of jurisdiction as well. I don't think federal jurisdiction works that way. Our argument is that for many, many years, the extent of the control and operation through the federal government on the oil industry is sufficient to give rise to federal officer jurisdiction. And we would submit that's an independent basis for there being removal here as well. I see my time has expired. I'd like to reserve time, but I'm happy to answer questions. For pharmaceuticals, if there was a claim, and maybe this is being made, maybe we'll go to the OxyContin situation where there is a deliberate attempt through public media to inflate the need for a drug which is harmful. And the state suits are brought based only on state law. But the thing being regulated is such that the regulation is so extensive, as would be true for OxyContin, that you would say that that has to be brought in state court and federal court. So the claims arising from the deliberate misstatements, the things done with doctors to inflate the need to minimize the harm, you'd say that has to be brought in federal court, even though all of the allegations in a given lawsuit, speaking only of a hypothetical lawsuit, not the ones that are out there, would have to be, even though the claims are state in nature, you're saying would have to be federal because of the nature of the regulation. Now, let me speak to the opioid situation, because the cases have been brought in state court as well. And the argument is that the victim is the person who suffered the opioid from a pill or series of pills delivered to that person in that state who were subject to misrepresentations made in that state. And there is not a federal component to it in the same way that there is here. There is no federal common law of drug prescription abuse. There is a federal common law of interstate and international pollution. There is no strategic OxyContin reserve. There is a strategic control reserve. I don't want to seem to undermine that argument, but I could be looking at that too myopically. Well, no, the Clean Air Act stands in a different species, but because the opioid situation is one that really is traceable to a particular product and a series of misrepresentations to a particular state, it sets up for state law analysis in ways that the Supreme Court of the United States has said interstate pollution does not. Because here the core of their argument is that by operation of causation, all of the effects all around the world have a residual consequence that is felt on the shores of Delaware or in the public works of Hoboken. And that makes it different from opioids. It also makes it different from the normal state-run nuisance claim or any trespass claim, because these are worldwide effects. And the Supreme Court has made very clear, and I think when it eventually resolves one of the circuit conflicts that I've identified, it is going to say, I believe, that these are interstate cases that have to be resolved under federal common law and that the federal common law will govern the nature of the nuisance claim and action that have been brought. And that's why we think you should say that. The Second Circuit said that. The Second Circuit described almost identical allegations as artfully pleaded, even though they, too, had been advanced under state law. They had not invoked federal common law. They had invoked New York nuisance law. And the Second Circuit said, no, these are artfully pleaded. These are actually claims arising under federal common law. And that's the right answer. If the Court has no further questions now, I'd like to reserve for rebuttal. Thank you. Good morning. May it please the Court. I'm Vic Scher. I represent the state of Delaware. With me at council table is Jameson Tweedy from the AG's office. Your Honor, your Honor's defendant's position here eviscerates the well-pleaded complaint rule and also does incredible damage to the actual allegations in the complaint. This case is not about omissions or regulating omissions. This case is about deception and, as the Fourth Circuit said, failures to warn aided by a sophisticated campaign of disinformation. What would be the remedy that you would seek? The remedy? It is the costs of the damages incurred within the state as a result of that are traced causally to defendant's conduct. No injunctive relief at all. I'm sorry? No injunctive relief at all so they could go on and destroy the atmosphere because you're not worried about future conduct. Correct, Your Honor. It's past looking and it's tort-based, and that's another reason why the cases are not federal in nature. There's not a substantial federal question because they are damage-specific and location-specific. But you're alleging excess. The result of their torturous conduct, you're alleging, has led to excess production of products which are destroying the atmosphere. It's led to excess consumption of the defendant's products which led to emissions which cause things like raising the sea levels and excess drought and things like that that have localized effects. Your Honor, I want to be very clear because the complaint does seek injunctive relief, equitable relief, in the following sense, which is an abatement fund that is dedicated to the costs of responding to the nuisance for the past conduct locally as an alternative. But, Your Honor, you can understand, Judge McKee, you can understand our position this way. If at trial we fail to prove that there was any deception or campaign of disinformation, we lose. If we fail to show the failure to warn and the campaign of deception and denial, if we fail to show that those elements had any impact, we lose. These are not about all of the emissions in history around the world. These are about emissions that it's our burden to prove at trial are tied to this deceptive conduct. And lawsuits addressing the marketplace, truth in the marketplace, failures to warn and deceptive conduct are inherently state core interests. Now, they may argue that there are limitations on the power of the state courts to affect certain relief and damages. But your complaint is not just about this. You talk about fossil fuel defendants created conditions that significantly interfere with public health and public safety by controlling every step of the fossil fuel product supply chain. And you seek to provide for abatement of the public nuisance and join future common law nuisances. So misrepresentation is a part of it, but just the combustion of fossil fuels is itself one of the things you're complaining about. No, it's not, Your Honor. And let me be very clear. If you look at paragraph, I think it's 247, which is, yeah, 257 JA 451 to 52, which are how the defendants participated in creating the nuisance. It is all tied to the course of deceptive conduct. Yes, they have superior knowledge. Yes, they control all the means of production and all the information. And it's because of that knowledge and their failure to warn and the affirmative steps, that's what contributed to the creation of the nuisance. It is not merely emissions. And as I said, if we don't prove either the existence of the tortious conduct or that the tortious conduct made a difference, we lose. That's our burden under state law. Okay. Let's talk about, you know, Mr. Frederick argues with some force about the massive extraterritoriality of this suit. The Second Circuit was troubled, you know, foreign affairs implications. You're suing over fuel that was sold abroad, burned abroad, maybe extracted from the ground abroad. So why isn't this preempted? Doesn't that have to be a uniquely federal set of interests and laws? You're seeking to drag the entire world into Delaware court. No, Your Honor, we're not. We're seeking to drag these defendants into Delaware court to be held accountable for the consequences and impacts of their conduct in Delaware. That's it. And, Your Honor, the Supreme Court— Even conduct that was taken abroad using foreign fuel that was extracted abroad, refined abroad, sold abroad, and burned abroad. Only if it was part of the deceptive—only if it was enhanced by the deceptive conduct. It was not part of our consideration, but I would not want to be the trial lawyer who's trying to figure out how you prove that allegation. I give it a lot of thought, Your Honor. It's almost metaphysics. It is not, Your Honor. We know that they—it'll be a jury question for sure because we know when they did the deception. Well, let me step back a second. We have not yet had a chance to conduct discovery. But there is enough in the public record, and you have a lot of it in the complaint, that tells what they knew when, their failure to warn as of that time, the affirmative campaigns that they undertook to discredit— excuse me—to discredit climate science and climate scientists. That's probably your strongest point. I'm sorry? That's probably your strongest point. Again, not jurisdictionally, but in terms of merits, which is not really our concern. But it's a misstatement of law to say that states cannot hold actors who are out of state accountable for conduct that has— No, I'm not sure that's what we're saying. No, not that you're saying that, but that's what Mr. Frederick was saying. They said that— I'm not sure he's saying that. He's saying that the very nature of this is such that no one state should be empowered to, via the jurisdictional hook, to consider claims that have a worldwide impact. Your Honor, you don't become either federal in nature or subject to a failure-to-state-a-claim defense because you do the same bad thing everywhere. And, in fact, the contrary is true. If you look at the Supreme Court's decision in Young v. Massey and many of the public state interest cases that we cited in our brief about truth in the marketplace and deceptive marketing, and even the First Amendment cases, the Hustler case, where the impact was felt in New Hampshire of publications countrywide, and that was entirely appropriate, this Court has consistently joined the universal rule that the Supreme Court has handed down about how to treat a well-pleaded complaint. When you look at the complaint, there is no necessary federal issue that is asserted. There's no challenge to any statute or any regulation. There's no federal permit that is at issue that is either invoked or challenged. Instead, what you have is simply the deception conduct and the consequences from that. And state courts, the Supreme Court has made very clear that state courts have to be given the chance to hear cases in their own courts and apply federal preemption and other federal doctrines as appropriate. This case does not necessarily raise any federal issue under Grable and certainly no substantial federal issue under Grable. I don't know about my colleagues, but what I'm wrestling with here, I agree in terms of a federal issue not being raised under Grable, but it seems to me sometimes if it looks like a duck, walks like a duck, and quacks like a duck, it's a duck. Given the kind of behavior we're talking about, the impact of it, and it's what Mr. Frederick argued very, very forcefully, that I don't know how we cabin this to the jurisdictional confines of a state. You may be absolutely right that the law requires Milwaukee 2 and AEP, which I know you have different interpretations of, require that we do a lot of the state court claims, and that's all we're talking about, to be held in a state forum. But it just seems like the Supreme Court needs to do something. So like they did in the nuclear regulatory situation, this is a special formulation for the kind of harm that arises from emission of radioactive particles because it doesn't just damage the folks around the reactor. It theoretically damages everybody in the world. Your Honor, the Supreme Court was very clear in AEP about two points. The first is that whatever federal common law of interstate emissions existed before has been displaced by the Clean Air Act, and it no longer exists. And that's what Milwaukee 2 talks about for the Clean Water Act, and that's what AEP makes clear for the Clean Air Act. I've heard a few of that, and I asked your opponent about that. It does seem to me that the Clean Air Act did do that. And then at the end of the opinion, the unanimous court says the viability of state law – the viability vel non of state court claims depends on the preemptive effect of the act. That's an ordinary preemption defense, which is not capable of supporting removal jurisdiction. And we know that from the way the Supreme Court treated the issue in the Ouellette case, which it treated as a matter of ordinary preemption. And in that case, if the defendants were right, the Supreme Court was wrong because the ability to sue would have been lost. And that's clearly not what the Supreme Court said. Do you agree that if there were complete preemption, which is not being argued, that would be a different matter? If there were complete preemption by the Clean Air Act, it would be a different matter. There's not, for all the reasons that all the other courts have held. And there is no comparable complete removal basis preemption or occupation of the field with respect to these kinds of consumer-type claims, especially based on any federal common law. So I see my time has expired. Counsel for Hoboken will be up next. Thank you. May it please the Court. My name is Matthew Brinkerhoff, and I represent Pele, the city of Hoboken, in one of the two cases, obviously, that have been consolidated for argument. There's a number of points I want to make. First and foremost, I just want to remind the Court about the presumption against removal in 1441 cases, anyway, and the entire sort of arising under arguments that are being made by the defendants in this case. Obviously, the Third Circuit, the Supreme Court, all the circuits are together in recognizing that the presumption has always got to be against allowing removal. It has to be always in favor for federalism reasons for remanding back to the state court. And when you have sort of the state of the law as it exists at the moment with four circuit courts of appeal who have all affirmed that these cases must be remanded, because that's our procedural posture as opposed to city of New York, and you have countless district court cases, it is very hard to fathom how, if you're exercising that presumption and exercising that restraint, you could rule the other way. Now, that will ask you about 1349, which I think the other courts have not been doing a very thorough job of explaining. You know, we have this issue in 1349 where it tells us to look for any, where is the language, any cases arising out of or in connection with, okay? Now, the other circuits focus on arising under, and they say, but for causation. But then that makes in connection with surplusage. It suggests in connection with, you know, it sounds like related to, it has to have some broader meaning. So why is Mr. Frederick Wright that, you know, these fuels, 30 percent of them are coming from the outer continental shelf, and therefore this suit is connected to those? That's a big proportion of the fuel burned around the world. Understood. A couple of points. One, they claim 30 percent, but if you actually look carefully at the support they have in their notice of removal for that and you look at the annual reports for these companies, it ends up closer to 1 to 5 percent. Still 1 to 5 percent? I'm not trying to dodge the question, but I want to lower it a bit. That's all set forth in an amicus brief filed in the Delaware case by Robert Taylor. But I think the real answer is, as you probably noticed, one of the circuits, the Ninth Circuit, did at least go down the road of recognizing that this language of arising out of a connection is very broad textually, right? Hard to argue with that. And they still reached the same conclusion as all the other courts, and the reason they did that is in part for what you were pointing out earlier in the argument, which is what immediately follows that is any operation conducted on the outer continental shelf itself, and I would refer you to the First Circuit Court opinion, Justice Thomas, I believe. I may have got that wrong. But Judge Thomas, excuse me. But in any event, the First Circuit opinion, which lays out, and if you look at the cases, it's 100 percent true. Obviously, most of them come from the Fifth Circuit, but they all have a connection. I think the way it was described in the First Circuit opinion is they either have a direct physical connection to the outer continental shelf or there's a contract or property dispute. I agree. That's what the cases say, and it's an intuitive, like, geographic line. I'm just trying to understand how that squares with the arising out of or in connection with language. I'm trying to make sense of that because I think some of these other circuits treat it as surplusage. Right. And I think, again, I think it's the reference immediately following that to the operations. I think that's where you end up having these cases that are decided in the way that we've just been talking about and are, you know, discussed by the First Circuit opinion. All of them are directly tied to an operation on the shelf. And obviously, one of the big problems here with defendants' claims, and it affects every single one of them, is there are just really no decent, valid, limiting principles to the arguments they're making in this procedural context. Set aside reasonable debates that may be had about preemption at some point in the right forum. But here, if you go with the outer continental shelf, all of these oil companies have some operations. Most of them do. Right. On that shelf. And if you literally take the language, in connection with, arising out of, almost any claim that has to do with any harm that is caused by fossil fuels will be swept up in that jurisdiction. Even if it's only 1 to 5 percent? Even if we could get to 30 percent? What number? The smaller number? Needless to say, I don't think any of them should. But I'm saying, if you say that the fact that there's a company that has operations on the outer continental shelf can remove anything that, broadly, the way they're urging you to, has any connection whatsoever, which you should not, and no circuit court has. But if you did, think of the implications of that. The same kind of a problem infects every one of their arguments. Here it would mean that there would be a special form of federal jurisdiction that would be absolute, exclusive. They could remove virtually every case filed against any company that's operating on that shelf, for almost any kind of claim that one can imagine, under state law. They'll all be removed to federal court. It's the same with their federal officer arguments, where if you can point to one, you know, component of special fuels that have been produced under a contract with the federal government, and then say that you're bringing a case where there have been harms caused by the burning of fuel, which, of course, is what we're saying here, then that means that any case that has anything to do with the burning of fuel or pollution by any of these companies will all be removed to federal court. Are you saying it's harm caused by the burning of fuel, or harms caused by the increased burning of fuel? Well, obviously, in our complaint, I don't know, I mean, it's a very long complaint, I'll acknowledge that much, but there are a full 50 pages devoted to the campaign of deception that are directly related and specifically referenced in each and every one of the common law claims that we assert, as well as, obviously, the New Jersey Consumer Fraud Act claim that we brought. And it's that deception that has increased the burning of the fuels, yes, but the consumption of fossil fuels. The complaint is not limited to that. Defendants' production, marketing, and sale of fossil fuels on a massive, unprecedented scale has been a substantial factor, not just marketing. The recent surge in anthropogenic emissions, a substantial portion of which is attributable to defendants' extraction, production, and sale. Each fossil fuel company defendant has, by its conduct in manufacturing, marketing, distributing, and profiting, caused adverse effects. So, misrepresentation is thrown in there, but a lot of this is just, they produce and sell this, and then people go burn it. Right, but, what this complaint, I don't think it's a fair reading of the complaint, with respect, to not see both the 50 pages of deception arguments, and to not at least accept what we're saying, which is, we are suing about the harm caused by the increased use because of that deception. That goes all the way back to at least the 80s, when they went on an affirmative campaign to basically tell everyone that there was no problem when they knew otherwise, even though they were obviously hardening their own resources and assets, they knew full well. I mean, it's obviously very analogous in some ways to the deception that was dealt with in the tobacco cases many years ago now, which were primarily dealt with in state court. Obviously, the removal and jurisdiction issues are quite different. I'm not saying they're analogous, but the deception that these companies have done, I think it's worth not losing sight of the fact that that campaign of deception, which has only come to light in recent years and is detailed in our complaint, is now causing all of the harm that we're seeing. It's, you know, the tobacco companies are amateurs because they were just allowing people to die from cancer. These defendants are basically creating a situation where the entire planet is at risk of cataclysmic impacts and effects because of their deception, not because of the burning. In the future, if we win, they can continue to sell and encourage people truthfully to burn fossil fuels, and if people keep doing it, they will not be responsible for it. It does seem like this is really sui generis. I don't know of any other situation where local activity has an impact planet-wide, not just worldwide. I'm sitting here trying to think of one. I can't think of one. And that does seem to suggest to me that maybe what we do need to hear is something like a federal common law. There's just no other situation like this that I can think of. I'm not sure anyone can think of it. But as my colleague pointed out, the Clean Air Act basically displaced that federal common law as of this point. But obviously with savings clauses, we can argue about preemption. That should be for the state court, as you're aware is my position. But for my client, the city of Hoboken, while like any, I think, responsible human being, the mayor and all the others are concerned about worldwide global impacts, they're primarily concerned, they brought this case because of what's happening and has happened and continues to happen in Hoboken. The flooding, the massive storm surge, the hundreds of millions of dollars that they have had to spend as a result of the deception and misrepresentations and concealment that is still ongoing with the defendant's greenwashing campaign, which is designed to make everybody think that they are perfect corporate citizens, only helping us all, you know, try to avoid the devastating consequences of climate change, which is completely misleading. If they were to cut out all, and this again doesn't go to the issue before us, but I can't help but think about it. If they were to cut out all of the activity which you claim is misleading and which is leading to this, it may change the equation by a number of years, but the ultimate answer to the equation would not be changed, especially if we exceed that 2.5 threshold. I'm not so sure about that. People are still going to buy their F-150s and people are still going to go for their SUVs, turn up the heat more than they need to, turn up the air conditioning more than they need to. I mean, that's not going to change anything. I'm not so sure I agree with that. That campaign, if you look at, in the complaint, it points out that about some decent amount of the populace was at least somewhat concerned about the possibility of climate change. After the campaign of deception, they had lowered that by a substantial amount. That doesn't just affect consumers, although that's obviously the gravamen of the consumer fraud claim, but it also affects consumers who are voters, who vote and elect the officials who make policy. That deception campaign has had profound impacts. And the New Jersey Consumer Fraud Statute, like many state consumer fraud statutes, is very liberally construed in favor of if you are deceiving the public at large and somebody comes into court, a plaintiff like the city of Hoboken, and can prove that they are being injured by that deception, whatever the sort of causal means, you're entitled to be compensated, to be basically put in the position you would have been in. And our claim is all about being put in the position that Hoboken would have been in, which would have meant that most of the devastating effects of climate change that they've been feeling for the last 10 years would not have occurred yet, and with some hope and prayer may never occur. But right now, we're already very, very far down that road. And they're continuing these kinds of activities, the defendants. Thank you. Mr. Carrick, would you reserve the charge of rebuttal? Before we get into your points, I do want to briefly address this effort to reframe this case as a misrepresentation case versus a combustion case. What do you make of that? It's both. They make allegations about misrepresentations. I'm not running from the well-pleaded allegations about misrepresentations, but 120 times at least Delaware uses the word emissions. Hoboken uses the word emissions at least 70 times. I didn't count how many times emit was used, just emissions. So to say that it is only about misrepresentations is false. The other thing is that a misrepresentation case ordinarily is I mislead you, you take an act, that hurts me directly. You can trace causation directly back to the misrepresentation. Here they admit that there are all kinds of honest combustions and honest representations about fuel sources that have had a greenhouse gas effect. And so Judge McKee, you're absolutely right. This is sui generis. And the way I would submit that you analyze the case is from first principles. Where did the Constitution of the United States propose the law source to decide these questions of interstate and international pollution? The Supreme Court has answered that question consistently by saying it is federal common law. How do you evaluate the tort regulatory effect of a state court on a federal system? BMW versus Gore says you don't have a state court apply state law extraterritorially with respect to tort conduct. They conceded that basically if the defendants shut down every representation made in New Jersey and Delaware, they are going to claim an abatement fund for time immemorial for all the consequences that float up. And it's not just that sliver of causation that might have been occurring from deception. In the district court, what Mr. Scheer argued in Delaware was that they are going to claim responsibility for all the harms under a joint and several liability or an indivisible injury theory. So they can come here and artfully plead this is only about misrepresentations, but the gravamen of their claim is that the defendants are responsible for every effect that has occurred on a worldwide basis of the combustion of fossil fuels. And that clearly has to be federal. There has to be a uniform federal answer. It can't be that some states can go out ahead and assert liability against some defendants and others think that that's the wrong answer. I agree that the question has to be decided under the well-pleaded complaint rule, but even under federal officer removal, the defense theory of the complaint is given credit in determining whether or not removal is appropriate. So there's a little bit of equipoise in terms of how you construe the complaint, but ultimately because subject matter jurisdiction is a de novo standard, you have an obligation, I think, to determine is this claim about deceptions and omissions one that properly belongs in federal court, and we submit that it does. I would go back to the point about elements. They focus on the breach of the duty as misrepresentations, but that is not the entirety of their claim for relief. The entirety of their claim for relief is a breach of a duty, the misrepresentations, that had a causative effect, which is worldwide emissions, which causes sea level rise and other consequences that have to be addressed through actions that invariably will involve an interface with the federal government, thereby raising federal law just simply on the basis of what the relief is. And what they're asking for is a bottomless abatement fund that is going to address these consequences even when they acknowledge that honest representations that lead to lawful use of their product created the very same dangerous emissions as others. Now, they talk about the campaign of deception, but under their theory and under the volumes that we're talking about, the federal government had to have been deceived too because the federal government was releasing oil out of the Strategic Petroleum Reserve for national security purposes. The federal government was permitting leasing on Oxla, on the Outer Continental Shelf under Oxla and under federal lands. So under their theory, even the federal government must have been deceived to allow this increased production. That would be a classic federal law question, as this court has recognized in numerous cases. The federal relief may well be independent of any kind of, well, even for now, where there's a release to try to handle on inflation. That has nothing to do with their campaign. I couldn't hear the first part of your question. The federal leases don't necessarily tie into any kind of misrepresentation that they're alleging because there are other forces at work, such as now we're saying to deal with inflation. There may be a lot of reasons for a federal release disconnected totally from. No, their theory is that there was increased demand. The increased demand was artificially created. The federal government controlled a massive amount of the production. So the federal government increased production on the Outer Continental Shelf. So it could be federal releases totally independent of the demand for other reasons. They could be or they could not be. That part, it'll be impossible to entangle as a matter of causation. That's a Merrick's question due for another day. The question before you is, is this entire cluster of issues and problems one that should be a state law question that undeniably affects all 50 states and the associated territories of the United States, or is it a federal law question? And if it's a federal law question, we're entitled to remove the case and have it decided on the merits in federal court. That's what you have to decide. And we would respectfully submit, Judge McKee, it is a confounding, complex problem, but all the issues about limiting principles, it's not like anything that you would be saying about federal common law would be inconsistent with what the Supreme Court is saying or that a construction of OXLA that would be appropriate for in connection with would be something that would open up federal courts to OXLA cases given the sheer volumes of what we're talking about. And so I think that you can safely ride on a clean slate looking at the case from first principles and recognize that a case that is about deception and omissions is one that properly belongs in federal court. Thank you.